UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RAMON RAMIREZ,

        Movant,         24-cv-07957 (PKC)

  -against-


UNITED STATES OF AMERICA,

        Respondent.

-------------------------------------------------------------x
UNITED STATES OF AMERICA,

               19-cr-395 (PKC)

  -against-          <u>OPINION AND ORDER</u>


RAMON RAMIREZ, a/k/a "Obendy,"

        Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.:

    Ramon Ramirez moves to vacate, set aside or correct his sentence and, separately, for a sentence reduction for extraordinary and compelling reasons, pursuant to 28 U.S.C. § 2255 and 18 U.S.C. § 3582(c)(1)(A).[1] He was convicted at trial of conspiracy to commit murder-for-hire and the substantive crime of murder-for-hire. Ramirez faced a Sentencing Guidelines range of 210 to 240 months imprisonment. The Court sentenced him to a below-guidelines sentence of principally 120 months imprisonment. His conviction was affirmed on appeal. United States v. Collins, 21-1291, 2023 WL 309605 (2d. Cir. Jan. 19, 2023). He moved for a sentence reduction

---

[1] Given Ramirez's pro se status, the Court accords him special solicitude and considers the entirety of his submissions "to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quotation marks omitted) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

pursuant to section 3582(c)(2) of Title 18 and Amendment 821 to the Sentencing Guidelines, which motion was denied in an Order explaining the reasons for his ineligibility. (ECF 171 & 172.)[2]

The trial evidence showed that Ramirez became angry when he learned that his wife, with whom he was separated but living in the same house, was having an affair with another man, Eric Santiago. Ramirez discussed his extreme distress with co-defendant Vance Collins whom he knew as a close friend and leader of a gang. The two hatched a plan to hire someone to attack Santiago. While the attack was originally planned to be a physical assault, it eventually escalated to a plan for murder. Collins arranged for a lower-ranking gang member to commit the murder who, in turn, recruited a second individual. On the evening of the planned murder, the plan was disrupted by the presence of another person at Santiago's home. Thereafter, the would-be trigger man was arrested on an unrelated charge and the plan was abandoned.

For reasons to be explained the Court will deny Ramirez's section 2255 motion and his motion for a sentence reduction.

THE SECTION 2255 MOTION

A. Standard for Relief

"[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)

---

[2] Unless otherwise noted, all citations to "ECF" are to the docket in 19-cr-395 (PKC).

(quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)).

B. Ramirez's Eighth Amendment Assertions
Do Not Provide a Grounds for Section 2255 Relief

Ramirez presents an array of complaints about his time in the custody of the Bureau of Prisons, ranging from an inmate-on-inmate assault to inadequate medical care, invoking the Eighth Amendment. Because these grounds neither challenge the proceedings in which he was convicted nor the propriety of the sentence that was imposed, they do not state a ground for relief under section 2255. See Corrao v. United States, 152 F.3d 188, 191 (2d Cir. 1998) ("A motion under § 2255 must be 'directed to the sentence as it was imposed, not to the manner in which it is being executed.'" (quoting Dioguardi v. United States, 587 F.2d 572, 573 (2d Cir. 1978))); Reyes v. United States, 07-cv-10943 (SAS), 2009 WL 274482, at *6 (S.D.N.Y. Feb. 3, 2009) (a defendant's arguments "directed to the conditions of his confinement— specifically, the inadequate medical care he receives while in custody" are "not cognizable under section 2255").

C. Ramirez's Ineffective Assistance Claims Fail

Generally, a defendant is barred from raising claims in a section 2255 motion that were not raised on direct appeal. Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). This procedural default rule, however, does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504 (2003).

3

Ramirez raises multiple grounds alleging ineffective assistance of counsel during pre-trial motion practice and at sentencing. A defendant asserting that counsel's performance was ineffective under the Sixth Amendment must satisfy the two-prong test established by Strickland v. Washington. 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient." Id. at 687. "The determinative question at this step is not whether counsel deviated from best practices or most common custom, but whether his representation amounted to incompetence under prevailing professional norms." Harrington v. United States, 689 F.3d 124, 129–30 (2d Cir. 2012) (quotation marks omitted) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)).

"Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id.

Ramirez has not met his burden in showing that his counsel's performance was constitutionally deficient at any stage of the proceeding.

1. Lack of Jurisdiction. Ramirez claims that his counsel was ineffective because he failed to challenge what he characterizes as the Court's lack of jurisdiction. He appears to be reasserting his contention that his alleged crime was purely intrastate with no interstate nexus. In fact, his counsel filed a written motion to dismiss the indictment because, in the view of the defense, it was premised upon purely intrastate activity. (ECF 22 at 5–13 ("The interstate nexus requirement arises from constitutional limits on Congressional power over intrastate activities under the Commerce Clause. . . .").) The government responded that the murder-for-hire statute,

18 U.S.C. § 1958(a), only required the use of or causing another to use a "facility of interstate commerce" within the meaning of the statute. (ECF 27 at 2–4.) The government proffered that, as part of the charged murder-for-hire plot, text messages were sent by at least one member of the conspiracy between Sprint and T-Mobile phones and that all text messages sent from or received by a Sprint phone necessarily travel through a Sprint switching center located in Kansas. (Id. at 2.) The Court denied the motion in a written Opinion and Order. (ECF 32.)

At trial the evidence was sufficient to establish the use of a facility of interstate commerce. (Trial Tr. 453–55.) Counsel's performance at trial was not constitutionally deficient in failing to press the issue in front of the jury that would have been easily rebutted by the government and jeopardized counsel's credibility with the jury.

2. Severance. Ramirez asserts that his counsel was ineffective in failing to move for a severance of his trial from that of Collins. Assuming arguendo that his counsel was deficient in not moving for a severance, he must demonstrate that the motion was meritorious and there was a reasonable probability that the outcome would have been different if the motion had been granted. See United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990).

As the Second Circuit has noted, "[f]or reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003). This is particularly the case where, as here, defendants are alleged to be part of a single conspiracy. See United States v. Bernstein, 533 F.2d 775, 789 (2d Cir. 1976); United States v. Sperling, 506 F.2d 1323, 1342 (2d Cir. 1974).

Much of the evidence of communications between Collins and two other co-conspirators would have been admitted at a separate trial of Ramirez. This was an ample reason

to deny a severance and also supports the conclusion that the outcome of a Ramirez-only trial would not likely have been different.  Thus, he was not prejudiced by the failure to press the issue.  There is no basis to conclude that the separate felon-in-possession charge against Collins alone had any spillover impact on Ramirez.  The evidence on this separate charge against Collins was no more inflammatory than the direct evidence of the conspiracy that included co-conspirator Jakim Mowatt's purchase of a .25-caliber Phoenix Arms, pearl-handled pistol for use in murdering Santiago.

3. Marital Communications.  Ramirez argues that his counsel was ineffective for failing to object to the introduction of texts between Ramirez and his wife.  The government appropriately previewed with the Court and the defense the text messages between Ramirez and his estranged wife that it intended to offer at trial.  (ECF 108.)  The government argued that those messages were not protected by a marital privilege because the marriage had broken down and the parties were permanently separated and also because certain of the messages amounted to threats.  (Id.)  Ramirez's counsel vigorously opposed the introduction of this evidence, noting that the couple lived in the same home but on different floors and had meals together.  (ECF 109.)  He also argued Rule 403, Fed. R. Evid., as a basis for exclusion, offering that "if the Government's genuine purpose is to demonstrate to the jury that Mr. Ramirez was upset and angry that his wife was carrying on an affair with Mr. Santiago, the defense would be happy to stipulate to that fact."  (Id.)

The Court heard argument on the issue (ECF 119, Tr. 13–33) and learned that the estranged wife had been living in the basement as early as March 2016.  The Court comfortably concluded that by August 30, 2018, the separation was permanent.  (Id., Tr. 28–30.)  The texts of the estranged wife were not offered for the truth of their content.  After hearing out the parties,

the Court admitted the post-August 30, 2018 texts. (Id., Tr. 32.)  Defense counsel was not deficient in not pressing to have the estranged wife testify because there was not much she could do to negate the import of the texts sent by the defendant and would have been open to extensive and potentially devastating cross-examination by the government.  The performance of defense counsel has not been shown to be deficient and did not prejudice Ramirez.

4. Speedy Trial.  While Ramirez's speedy trial claim is not well described, he was not deprived of a speedy trial and there was nothing deficient in his counsel's failure to raise the issue on a statutory or constitutional basis.  Ramirez was arrested and presented to the Magistrate Judge on June 13, 2019, arraigned before the undersigned on June 19, 2019 and, on December 13, 2019, trial was set for April 6, 2020.  That trial date did not hold because of the national emergency caused by the Covid-19 virus that was declared by the President on March 13, 2020.

Ramirez's trial happened to be the very first criminal jury trial commenced in the Southern District of New York after the President's first emergency declaration.  The jury was empaneled on October 14, 2020.  The Judges of this Court were guided by an epidemiologist who advised on the precautions to be taken and the conditions under which it would be safe to proceed.  Once the pandemic hit, the trial of this action could not have happened one day sooner. See United States v. Pharmes, 22-221-cr, 2023 WL 6055952, at *3 (2d Cir. Sept. 18, 2023) (no violation of speedy trial right due to continuances caused by "disruptions occasioned by the COVID-19 pandemic").  Inclusive of the delay caused by the pandemic, Ramirez's trial was commenced 16 months from the date of his arrest and initial presentment.  Ramirez's counsel was diligent in protecting his client's rights and made an unsuccessful bail application on March 26, 2020 (ECF 67) premised on the need to have better access to his client during the trial preparation phase.

7

5. <u>Ramirez's Other Claims of Ineffective Assistance Are Poorly Described and Supported</u>. Other complaints about counsel's performance are vague and do not permit a reasoned response, even allowing for his pro se status.[3] <u>See</u> <u>Barnes v. United States</u>, 04-cr-186 (LAP), 2015 WL 5854030, at *7 (S.D.N.Y. Aug. 31, 2015) ("allegations relating to counsel's alleged errors in trial preparation and advocacy that are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source' are insufficient to establish an ineffective assistance claim" (quoting <u>Vasquez v. United States</u>, 91-cr-153 (PKL), 1997 WL 148812, at *2 (S.D.N.Y. Mar. 28, 1997)).) He also raises vague issues concerning his counsel's performance at sentencing. His lawyer argued energetically and effectively and, as noted, Ramirez received a sentence that was seven and one-half years below the bottom of the advisory Guidelines' range. No argument based in fact, law or constitutional principles would likely have produced a more advantageous result for Ramirez.

Ramirez has not demonstrated a deficiency in counsel's performance implicating his constitutional rights in the pre-trial phase, at trial or at sentencing and certainly nothing that caused him prejudice under <u>Strickland</u>.

THE MOTION FOR A SENTENCE REDUCTION FOR
<u>EXTRAORDINARY AND COMPELLING REASONS</u>

A. <u>Legal Standards</u>

A threshold requirement for a defendant's motion to reduce his sentence under section 3582(c)(1)(A) is that he must show that he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the

---

[3] Ramirez complains that counsel failed to object to the use of certain phone calls as evidence and failed to make certain objections to the government's arguments concerning Ramirez's communications with Collins.

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Ramirez has come forward with evidence of his satisfaction of the exhaustion requirement. (ECF 173 at 56.) The government acknowledges that Ramirez has satisfied the exhaustion requirement, and the Court deems the requirement to have been satisfied.

"Before it can reduce a term of imprisonment or release a defendant under § 3582(c)(1)(A), a district court must 'find[ ] that . . . extraordinary and compelling reasons warrant such a reduction.'" United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). District courts have "broad discretion" when considering such motions and are free to "consider the full slate of extraordinary and compelling reasons that may warrant an imprisoned person's release." United States v. Amato, 48 F.4th 61, 66 (2d Cir. 2022) (citation and internal quotation marks omitted). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason'" for a sentence reduction. United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020) (footnote omitted) (quoting 28 U.S.C. § 994(t)).

A Policy Statement issued by the United States Sentencing Commission effective November 1, 2023 presents helpful guidance to a Court considering a motion to reduce a sentence. U.S.S.G. § 1B1.13 (amended eff. Nov. 1, 2023). It addresses in some detail considerations relating to the "Medical Circumstances of the Defendant," the "Age of the Defendant," the "Family Circumstances of the Defendant," whether the defendant was a "Victim of Abuse" while in custody, whether the defendant received an "Unusually Long Sentence" and "Other Reasons." Id. § 1B1.13(b)(1)–(6). Of particular relevance to Ramirez's motion is the Policy Statement's discussion of "Medical Circumstances."

The Policy Statement provides several categories of medical conditions that may provide "extraordinary and compelling reasons" to reduce a term of imprisonment. First, that the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)" such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." Id. § 1B1.13(b)(1)(A). Second, that the defendant is "suffering from a [1] serious physical or medical condition," [2] "a serious functional or cognitive impairment" or [3] "experiencing deteriorating physical or mental health because of the aging process" and that, for each of these, it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. § 1B1.13(b)(1)(B). The third alternative is that the defendant is suffering "from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Id. § 1B1.13(b)(1)(C). Finally, that the defendant is "housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency" and "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death" from the disease, the risk of which "cannot be adequately mitigated in a timely manner." Id. § 1B1.13(b)(1)(D).

Finally, establishing the existence of extraordinary and compelling reasons is "necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)." Jones, 17 F.4th at 374. Even where such circumstances exist, "the court must also consider 'the factors set forth in section 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)).

10

B.  Neither Harsh Conditions nor Ramirez's Medical Conditions
Rise to the Level of Extraordinary and Compelling
<u>Circumstances that Warrant a Sentence Reduction</u>

Ramirez was first detained in June 2019 and was in custody throughout the COVID-19 pandemic.  At the time of sentencing on May 12, 2021, difficult pandemic conditions at prison facilities had continued for over a year, were well known and it was foreseeable that they would continue for some unspecified period into the future.   The Court cited the difficult pandemic-related conditions as a mitigating sentencing consideration.  (ECF 161 at 41.)

Nothing in the general conditions of Ramirez's confinement have been shown to be so unusually harsh as to rise to an extraordinary and compelling reason for a reduction of the sentence.  The Court, however, will take into account prison conditions in the total mix of circumstances to determine whether an extraordinary and compelling reason has been established.  See, e.g., <u>United States v. Malloy</u>, 07-cr-898 (VM), 2023 WL 2237504, at *2 n.1 (S.D.N.Y. Feb. 27, 2023) (Marrero, J.) ("[C]ourts in this District have determined that harsh conditions of confinement during the pandemic, without more, do not constitute 'extraordinary and compelling' reasons justifying a sentence reduction.") (collecting cases).

Ramirez today is 55 years old and a citizen of Nicaragua, the country to which he will likely be deported at the end of his sentence.  According to the Federal Bureau of Prisons ("BOP"), his anticipated release date is January 15, 2027.[4]  At the time of sentencing, the Court was aware of Ramirez's hypertension, gout and high cholesterol, conditions that continue to this day.  (ECF 156 at ¶ 56; 161, Tr. at 40.)  He also has been diagnosed with glaucoma.

In March 2024, Ramirez was the victim of a vicious inmate-on-inmate knife attack that included an assault with "a lock in a sock" and kicking.  (ECF 173 at 22.)  The attack

---

[4] https://www.bop.gov/inmateloc/ (lasted accessed Nov. 15, 2025.)

11

resulted in serious injuries including fractures of nasal bones, mandibular structures and ribs, a blowout fracture of the right inferior orbital wall and corneal abrasion. He was hospitalized and required multiple surgeries. He presently reports that he suffers from headaches, loss of balance, difficulties with speech, chewing and swallowing food and Post-Traumatic Stress Disorder.

As of June 2024, he was listed as cleared for regular duty and assigned a lower bunk. (ECF 173 at 61.) At the time of a June 2025 examination, he denied pain or other major difficulties.[5]

The Policy Statement for section 3582(c)(1)(A) identifies "Victim of Abuse" as an extraordinary and compelling reason for a sentence reduction if the defendant was a victim of either sexual abuse or physical abuse resulting in serious bodily injury that was committed by or at the direction of a correctional officer or other person with custody or control of defendant or affiliated with the Bureau of Prisons. U.S.S.G. § 1B1.13(b)(4). The Policy Statement requires a finding of the foregoing in a judicial or administrative proceeding. Id. The unprovoked assault of Ramirez has not been shown to have been committed by or at the direction of a corrections officer or anyone else who exercised custody or control over him. No finding of wrongdoing by any judicial or administrative tribunal or authority has been presented. The Court nevertheless acknowledges that neither the Sentencing Guidelines nor the broad discretion recognized in Brooker foreclose a court from considering the severity and lasting impact of any serious injury, including an inmate-on-inmate assault, as an extraordinary and compelling circumstance.

---

[5] "Denies pain presently. Denies HA [headaches], visual loss, dizziness, syncope [fainting], chest pain with or without exertion, dyspnea [shortness of breath], abdominal pain, fever, joint swelling, muscle aches. Denies abdominal pain, vomiting, diarrhea. Denies testicular pain. Denies medication side-effects. Denies depressive symptoms, anhedonia, lack of appetite, sleeping problems, depressed mood, suicidal ideation, homicidal ideation. Denies anxiety or ruminating thoughts. Denies hallucinations and delusions." He was assessed to have anxiety disorder, unspecified mood disorder and migraines, among other conditions. (Encounter Notes of 6/9/2025.)

12

There is no indication that the assault on Ramirez was other than an isolated and unprovoked attack. There is no evidence that it was motivated by a protected or immutable characteristic of Ramirez or a desire to retaliate against him for some perceived act or deed on his part known to anyone other than, perhaps, his assailant. There is no reason to believe that an unprovoked assault on him is likely to recur. The assault was severe and its physical and psychological consequences long lasting. Yet, based upon a review of his extensive medical records spanning over 700 pages in length, Ramirez is receiving an acceptable level of care and has improved greatly since the assault, despite his claim that prison officials have been indifferent to his needs.[6] There is no evidence that there is a specifically identifiable form or method of treatment that he has been denied because of his incarceration.[7] Under these circumstances and considering the totality of his arguments, including those of the ineffectiveness of his lawyer and his ineligibility for other forms of sentence reductions for what he views as unjust reasons, the Court concludes that Ramirez has not established an extraordinary and compelling circumstance for a sentence reduction.

## C. The Section 3553(a) Factors Do Not Support a Sentence Reduction

Conspiracy to commit murder for hire is a most serious crime. Ramirez was not a collateral player in a scheme designed by others. He was angry that his wife, from whom he was separated, had a relationship with another man, Santiago. At Ramirez's instigation, Santiago became the intended victim of what evolved into a murder-for-hire plot. Ramirez hired Vance

---

[6] Ramirez asserts in a conclusory manner that his "pain and suffering are a direct result of the BOP's deliberate indifference[] that borders on criminal negligence." (ECF 182 at 4.)

[7] Ramirez argues that he is subjected to a constant risk of infection, chronic pain that needs to be managed, and inadequate nutrition, issues he asserts cannot be addressed while in custody. (ECF 182 at 3.) But he has been treated for headaches, pain and anemia, and appears to receive proper medications administered when needed.

Collins, a gang leader, promising to pay him $25,000 and deliver certain business to him. Collins tapped Jakim Mowatt to do the job and Mowatt in turn recruited Barry Johnson to help him carry out the murder. Mowatt purchased a .25-caliber Phoenix Arms, pearl-handled pistol for use in committing the murder of Santiago. The plot was delayed when Santiago was found in the presence of another person. An unrelated arrest of Mowatt thwarted the entire plot.

Ramirez exercised tight control over his wife, placing on her car a GPS tracking device and a note reading "I know where you're at, Ramon." (Trial Tr. 89.) He sent her threatening text messages telling her to "tell him [Santiago] to find a cheap funeral home." (GX 702-L-T.) Ramirez had been arrested in 2016 for swinging a machete at his wife in their home.

At sentencing, Ramirez accepted no responsibility for his crime and that remains true today. As noted, the sentencing range for Ramirez was between 210 months and 240 months imprisonment and he received a sentence of principally 120 months imprisonment, substantially below the advisory Guidelines. As the Court noted at sentencing, he will likely be deported from the country at the end of his 120-month sentence. (ECF 161 at 40.)

The Court accepts that Ramirez has tried to better himself while incarcerated and has participated in several worthwhile programs. He asserts that he has mentored young Latinos coming into the system and is a religious leader. (ECF 182 at 2.)

Ramirez described his "Release Plans" in a June 13, 2024, application to the Warden for a sentence reduction: "I will go to live with my wife and children in New York where I have the support of family and friends." (ECF 173 at 56.)[8] The statement is both

---

[8] Elsewhere, Ramirez states that he is still married to his wife and denies any estrangement from her. (ECF 182 at 2.) In his direct submissions to this Court, he gives a more benign version of his future plans, omitting direct reference to his wife.

14

troubling and unrealistic given the nature and circumstances of the crimes directed at his wife's lover and the likelihood of deportation to Nicaragua upon release.

The Court has considered all of the arguments and factors presented in Ramirez's submissions in their totality and concludes that they do not present extraordinary and compelling circumstances that would support a sentence reduction.

CONCLUSION

Ramirez's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.  Ramirez has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253.

Based upon the totality of circumstances raised in his submissions to the Court, Ramirez's motion for a sentence reduction for extraordinary and compelling reasons pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

The Clerk is respectfully requested to terminate the motions at 19-cr-395, ECF 173 & 175, and 24-cv-7957, ECF 1, and close 24-cv-7957.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        December 3, 2025

15

COPY MAILED TO:

Ramon Ramirez, Register No. 86958-054
FCI LORETTO
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
CRESSON, PA 16630